**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

John E. Eldredge


     v.                                  Civil No. 08-cv-41-JD

Larry Blaisdell, Warden,
Northern New Hampshire
Correctional Facility

**REPORT AND RECOMMENDATION**

Before the Court is John Eldredge's petition for a writ of
habeas corpus (document no. 2), filed pursuant to 28 U.S.C. §
2254.  The matter is before me for preliminary review to
determine whether or not the claims raised in the petition are
facially valid and may proceed.  See Rule 4 of the Rules
Governing Section 2254 cases in the United States District Courts
("§ 2254 Rules"); United States District Court District of New
Hampshire Local Rule ("LR") 4.3(d)(2) (authorizing magistrate
judge to preliminarily review pro se prisoner filings pursuant to
28 U.S.C. § 1915A).

Standard of Review

Under this Court's local rules, when an incarcerated
plaintiff commences an action pro se and in forma pauperis, the

magistrate judge is directed to conduct a preliminary review.  LR
4.3(d)(2).  In conducting the preliminary review, the Court
construes pro se pleadings liberally, however inartfully pleaded.
See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200
(2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and
Haines v. Kerner, 404 U.S. 519, 520–21 (1972) to construe pro se
pleadings liberally in favor of the pro se party).  "The policy
behind affording pro se plaintiffs liberal interpretation is that
if they present sufficient facts, the court may intuit the
correct cause of action, even if it was imperfectly pled."  See
Castro v. United States, 540 U.S. 375, 381 (2003) (noting that
courts may construe pro se pleadings so as to avoid
inappropriately stringent rules and unnecessary dismissals of
claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).
All of the factual assertions made by a pro se plaintiff and
inferences reasonably drawn therefrom must be accepted as true.
See id.  This review ensures that pro se pleadings are given fair
and meaningful consideration.

Background

     On May 12, 2006, John Eldredge, who was on parole for a
sexual offense for which he served prison time, turned himself in

2

to his parole officer because he had violated the conditions of his parole by using drugs.[1]  A parole revocation hearing was held on June 26, 2006.  Prior to the hearing, Eldredge, through his attorney, entered into an agreement with his parole officer for Eldredge to plead true to the violation and receive a one year "setback" in prison.  Eldredge agreed to participate in NA and AA programs during his incarceration.  Eldredge pleaded true to the violation and the Parole Board revoked Eldredge's parole, agreeing to consider a request for reparole in April 2007.  The Parole Board found that Eldredge's parole was "revoked for absconding, failure to report, heroin use, failure to work, and failure to notify police of address change" and that the violations merited a "one-year sanction."  No other directive or agreement was made part of the record by the Parole Board.  The Parole Board did not specifically exempt Eldredge from any particular programming not mentioned in the pre-hearing agreement, or promise that Eldredge would be paroled at the end

---

[1]The papers filed by Eldredge indicate that he also failed to notify his parole officer that he was moving, failed to notify the police department of the city he was moving to as required by the State sex offender registration statute, and failed to maintain employment while on parole.  Although Eldredge ultimately admitted to the violations charged, he claims that his reason for turning himself in was to get himself away from illicit drug use.

of one year, but only determined that he would be eligible to be considered for reparole at that time.

While incarcerated awaiting his June 26 parole hearing, Eldredge was interviewed by Judy Mann at the prison's Sex Offender Program ("SOP").  After Eldredge's parole was revoked, Mann recommended that Eldredge participate in the SOP's Parole Violators Group ("PVG").  Mann found that Eldredge had failed to take full responsibility for the conduct which lead to his parole violation, blaming his addiction and his parole officer instead. Further, Mann found that Eldredge refused to concede that his failure to notify the police or his parole officer of his address change put him at risk of reoffending, because he believed the risk had been eliminated by his previous participation in sexual offending treatment programs during his original sentence and while on parole.  After speaking with Eldredge's outside treatment provider, Mann also found that Eldredge's substance abuse had created issues in his sexual offender treatment.  For all of those reasons, Mann recommended that Eldredge be required to complete the PVG.  Eldredge was given the opportunity to enter the PVG on July 17, 2006 and July 19, 2006.  On both occasions, Eldredge refused to participate in the program.

4

A reparole hearing was held on April 26, 2007.  At that
time, Eldredge's counselor recommended to the Parole Board that
parole be denied because Eldredge had neither completed the PVG,
nor even conceded that he needed to complete the program.
Instead, Eldredge refused programming on the grounds that he
believed his agreement to plead true to the violation exempted
him from having to participate in any sexual offender
programming.

At the April 26 hearing, the Parole Board asked Eldredge if
he had completed the sexual offender programming recommended by
Mann.  Eldredge stated that he had completed the SOP during his
original prison term, and that he should not be required to
engage in further sexual offender programming as a condition of
reparole because his true plea to the parole violation was based
on an agreement that he would be required to participate in
substance abuse counseling, not sexual offender programming.
Despite these arguments, the Parole Board denied Eldredge parole
until he completed the PVG at the SOP.

Eldredge filed a petition for a writ of habeas corpus in the
Coos County Superior Court, which dismissed the petition without
a hearing.  Eldredge appealed the dismissal to the New Hampshire

Supreme Court, raising federal constitutional grounds for the relief he sought.  The New Hampshire Supreme Court declined the appeal and this petition followed.  Eldredge claims here that his Fifth and Fourteenth Amendment due process rights have been denied by the Parole Board's denial of parole, because that decision was inconsistent with the agreement he entered into prior to pleading true to the parole violation.

## Discussion

It is well-settled that a convicted person has no constitutional right to be conditionally released, on parole or otherwise, before the expiration of a valid sentence.  See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979).  A valid conviction, with all its procedural safeguards, extinguishes that liberty right.  See id.; see also Meachum, 427 U.S. at 224.  A right to parole under the Due Process Clause exists only if such right is created by State law. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Hamm v. Latessa, 72 F.3d 947, 954-55 (1st Cir. 1995); Brooker v. Warden, No. 98-466-JD, 1999 WL 813893, at * 2 (D.N.H. June 22, 1999).

In New Hampshire, a convicted inmate has no State-created liberty interest in parole.  See Jago v. Van Curen, 454 U.S. 14,

19-21 (1981); <u>Ainsworth v. Risley</u>, 244 F.3d 209, 216-17 (1st Cir.
2001); <u>Knowles v. Warden</u>, 140 N.H. 387, 389, 666 A.2d 972, 974-75
(1995).  "In determining whether state law provides a protectable
liberty interest in parole, federal courts are bound by the
state's interpretation of applicable state law unless that
construction or application violates federal law." <u>Brooker</u>, 1999
WL 813893, at * 2.

        The applicable New Hampshire parole laws are found in N.H.
Rev. Stat. Ann. ("RSA") § 651-A.  The statute provides that:

>        A prisoner <u>may</u> be released on parole upon the
>        expiration of the minimum term of his sentence,
>        [as adjusted by other statutory provisions],
>        provided that there shall appear to the adult
>        parole board, after having given the notice
>        required in RSA 651-A:11, to be a reasonable
>        probability that he will remain at liberty without
>        violating the law and will conduct himself as a
>        good citizen.  Any prisoner so released shall be
>        given a permit by the board to be at liberty from
>        prison during the unexpired portion of the maximum
>        term of his sentence.

RSA 651-A:6, I (2007) (emphasis added).  Under authority provided
by RSA 651-A:4, III, the Parole Board has adopted rules
pertaining to parole policy as follows:

>        Parole shall be considered a privilege, something
>        to be earned rather than automatically given, and
>        any release prior to the maximum term shall be
>        made only upon careful and lawful consideration.
>        An inmate shall not be granted parole unless the

> board finds a reasonable probability that the
> inmate will remain at liberty without violating
> any law and will conduct himself as a good
> citizen, pursuant to criteria in [N.H. Code Admin.
> R.] Par 301.02.

N.H. Code Admin. R. Par 301.02.

The New Hampshire Supreme Court has repeatedly held that the Parole Board has broad discretion in its parole decisions and that the Board is not mandated to grant parole to an inmate, even though he may meet certain conditions or criteria.  See Knowles, 140 N.H. at 389, 666 A.2d at 974–75; Cable v. Warden, 140 N.H. 395, 398, 666 A.2d 967, 969 (1995); Baker v. Cunningham, 128 N.H. 374, 381, 513 A.2d 956, 960 (1986).  Simply put, "[t]he possibility of parole is not a right to liberty conferred by New Hampshire state law."  Brooker, 1999 WL 813893 at * 4.

Absent a constitutional right to parole, or a liberty interest in the grant of parole, there is no constitutional due process violation for a denial of parole because there is no due process right to be granted parole.  See Greenholtz, 442 U.S. at 7; Brooker, 1999 WL 813893 at *4.  Accordingly, such a claim must be dismissed, as it is not cognizable in a federal habeas petition.  Here, Eldredge argues that the Parole Board's revocation of his parole pursuant to his plea granted him a

8

liberty interest in being released on parole if he met the conditions to which he agreed – specifically, participation in substance abuse counseling – and therefore exempted him from having to participate in any other prison programming to obtain parole.

Parole regulations that govern the conduct of the Parole Board, however, require the Parole Board to evaluate an inmate's behavior during his custody when making a parole determination. Criteria to be considered by the Parole Board in making its evaluation and deciding Eldredge's suitability for parole include, among other things:

> (a)  The inmate's personality, maturity, sense of responsibility, and any developments in personality which might promote or hinder the conformity to the law;
>
> . . .
>
> (d) The inmate's criminal record, including the nature and circumstances of criminal activity, and the recency and frequency of previous offenses;
>
> . . .
>
> (h)  The inmate's conduct within the institution, including, but not limited to,
>
>     . . .

      (2)  Evidence of self-improvement through the
various institutional programs and, specifically
programs which addressed problems or issues that
contributed to the inmate's prior criminal
activity.

     (I)  Evaluations and recommendations received by the
board from the department of corrections, courts, and
relevant social service, mental health, and criminal
justice agencies.

    . . .

N.H. Code Admin. R. Par 301.01.  The administrative regulations

governing parole also identify the following situations in which

denying parole to an inmate is mandatory:

    [T]he Board shall deny parole if, in the judgment of a
majority of the hearing panel:

       (a) There exists a reasonable probability that the
individual will not conform to the conditions of parole
and/or the laws of the state of New Hampshire;

       (b) Continued treatment, mental or psychological care,
or vocational or other training within the institution
would substantially improve the inmate's capacity to
lead a law-abiding life upon release at a future date;

    . . .

N.H. Code Admin. R. Par 302.  Contrary to Eldredge's argument

that the Parole Board lacked authority to deny him reparole after

he served his one year setback, an examination of the relevant

parole regulations makes clear that the Parole Board is

authorized to take a continuing role in evaluating the

appropriateness of an inmate for parole at any time prior to his release.

Here, the Parole Board properly exercised its authority to make decisions based on Eldredge's institutional behavior during his incarceration rather than on the terms of a plea agreement. The regulations mandate that the Parole Board deny parole when, as occurred here, corrections officials and the Parole Board both determined that continued treatment in the PVG was appropriate prior to Eldredge again obtaining parole status.  The Parole Board's one-year setback to Eldredge only gave him the right to be considered for parole after serving that time in prison. Eldredge was not denied that consideration, as he was given a reparole hearing in April 2007.  Nothing in the petition here indicates that the Parole Board exceeded its statutorily authorized discretion in deciding not to grant Eldredge parole, or to require that he complete a specific program prior to being granted parole.  See RSA § 651-A:6(I) (giving Parole Board discretion to evaluate inmate's potential to succeed on parole).

Section 2254 confers jurisdiction on this Court to issue "writs of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court . . . on the ground that he is

in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). While Eldredge attempts to raise a constitutional due process challenge to his continued incarceration, the petition actually raises a challenge to the denial of reparole. Such a claim is not cognizable in a federal habeas action because, as an inmate has no liberty interest in gaining parole, there is no due process right to be granted parole. Accordingly, I recommend that the petition be dismissed.

Conclusion

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

/s/ Justo Arenas
Justo Arenas
United States Magistrate Judge

Date:     August 13, 2008

cc:       John E. Eldredge, pro se